Harry Gr. Herman, S.
The surviving spouse has petitioned under section 145-a of the Surrogate’s Court Act for a determination as to the validity of her right of election pursuant to section 18 of the Decedent Estate Law to take her intestate share. The only issue presented for determination is whether or not at the death of decedent petitioner was barred from asserting any right of election by reason of a prenuptial agreement and a postnuptial agreement whereby she waived such right of election. Petitioner contends that the agreements were revoked by testator prior to his death.
Decedent has been divorced by his first wife under a final decree of the Supreme Cdurt, Putnam County, on February 16, 1948. On February 28, 1948, the decedent and the petitioner herein in the office of decedent’s attorneys executed a duly acknowledged prenuptial agreement whereby she waived any right of election pursuant to subdivision 9 of said section 18. The agreement recited their contemplated marriage, that both knew of the affairs of a prosperous corporation in which both were officers, and of decedent’s ‘‘ obligation to members of his family and plans for them”. At that time decedent’s family consisted of his former wife and four adult children.
The agreement provided that within one month after the contemplated marriage with petitioner he would transfer 300 shares of common stock of this corporation under an indenture of trust, the net income of which would be paid to the petitioner. On the same day, apparently as a precautionary measure, decedent executed a codicil to a will of January 30,1948, and directed his executors to set up a trust of these 300 shares, the net income of which was to be paid to petitioner during her lifetime, with the proviso that the codicil was to be deemed void if the trust had been set up by decedent.
On the following day, February 29, 1948, decedent and petitioner, who had been employed by the corporation and had been decedent’s secretary for many years, were married in Connecticut. On March 19, 1948, decedent transferred the 300 shares to trustees for the benefit of petitioner and the decedent and petitioner simultaneously executed a duly acknowledged postnuptial agreement which, among other conditions, provided that each waived any interest in the other’s present or future property, and their respective estates, and any rights under said section 18 to elect or take “ in contravention of the terms of any present or future Last Will and Testament of the other ”.
*89 Decedent, on the same day, March 19, 1948, executed the will which was admitted to probate in this court on July 10, 1961, following decedent’s death on June 13, 1961. By the will of March 19, 1948, decedent’s prior will and codicil were revoked. The petitioner was not mentioned in this later will and although she consented to its probate she expressly reserved her right to elect to take against this will.
The execution of the prenuptial and postnuptial agreements was established as was the existence of the continuing trust of 300 shares of stock. The evidence further established that the petitioner had received dividends under this trust totaling $84,900, a portion of which she received after decedent’s death and after she had filed the notice of election, and in fact as recently as October, 1962.
A search for the agreements was fruitless. The testimony indicated that duplicate originals of the prenuptial and post-nuptial agreements were delivered to the decedent and petitioner in the office of decedent’s attorneys. Neither agreement has since been located. The petitioner was permitted to testify over objection by the respondents that in March of 1950 she told decedent that she was pregnant and that he thereupon removed the duplicate original of the March 19, 1948, agreement from his office safe and wrote “void” across each page. Decedent and petitioner then initialed the agreement and decedent stated that he would make a new will. Petitioner testified that she suffered a miscarriage the following month. There was no issue of decedent’s second marriage and decedent did not execute any later will or codicil.
Petitioner’s testimony as to the alleged “revocation” was received in order to ascertain what, if anything, could be learned of the possible existence and disposition of the agreements, subject, however, to a motion to strike out such testimony. The objection raised by respondents to the admissibility of said testimony must be sustained. The testimony by petitioner as an interested party in her own behalf as to what the decedent said and did in 1950 related to a personal transaction and communication with the decedent and was clearly violative of section 347 of the Civil Practice Act. Respondents’ motion to strike out petitioner’s testimony as to such transaction is granted. There was no waiver of section 347 by the testimony of the attorney-draftsman called as a witness by respondents, since he was not an interested party. Nor did the testimony of a legatee called by respondents as to efforts to locate the agreement after decedent’s death open the door so as to permit petitioner to testify as to the alleged revocation of the agreement during his *90 lifetime. The claim as to the alleged revocation was supported only by the uncorroborated testimony of the petitioner as to a transaction to which she was not a competent witness.
The petitioner takes the position that the prenuptial agreement is ambulatory in nature and in the same category as a will; that once such instrument was shown to have been in possession of the deceased its nonproduction unexplained creates thé presumption that it was revoked by decedent during his lifetime. The argument is advanced that if the waiver of a right of election can be cancelled by the subsequent reconciliation of the parties, the absence of the postnuptial agreement proves a cancellation.
The right to file a notice of election pursuant to section 18 of the Decedent Estate Law is a personal right as distinguished from a property right (Matter of Visich, 204 Miscc. 1). This right may be. waived, however, by a duly acknowledged instrument to that effect (Decedent Estate Law, § 18, subd. 9). Under said subdivision the waiver or release may be unilateral, bilateral, with or without consideration, absolute or conditional and executed either before or after marriage. No issue is here raised as to the validity of the agreements or as to their effectiveness to bar the petitioner’s right of election, provided that the agreements were in force at the death of testator. Clearly, the decedent was free to consent to a cancellation of the prenuptial agreement or to make a valid devise or bequest to his wife, despite the waiver by her, if he saw fit to do so (Irving Trust Co. v. Day, 314 U. S. 556).
However, the evidence failed to establish a cancellation or revocation of such agreements. Cancellation and revocation are closely synonymous and the term cancellation as referable to legal documents means to annul, render void and invalid by so marking, or to destroy, while revocation means to recall a power or authority previously made, and as referable to privileges, to annul, repeal or rescind (Matter of Glenram Wine & Liq. Corp. v. O’Connell, 295 N. Y. 336).
There is a legal presumption of continuance, so that a state of facts once established is presumed to continue for as long a time as is usual with things of that nature (Wilkins v. Earle, 44 N. Y. 172,192; MacRae v. Chelsea Fibre Mills, 145 App. Div. 588). Wills are an exception to the rule. In the case of a will which by its very nature is ambulatory, and effective only upon the death of the testator, failure to produce the instrument after a careful and exhaustive search raises the presumption, in the absence of explanation, that the instrument was revoked by the decedent during his lifetime (Matter of Kennedy, 167 N, Y, 163, Matter of Staiger, 243 N. Y, 468).
*91 No such presumption arises however in the case of the prenuptial agreement, at least none arises after the agreement becomes effective, i.e., upon the marriage of the parties. Although ambulatory prior to marriage a prenuptial agreement is not ambulatory thereafter.
The record is barren of proof that decedent revoked the March 19, 1948 postnuptial agreement. His conduct subsequent to the claimed pregnancy of petitioner in 1950 until the death of decedent in 1961 is void of any indication that decedent intended to confer any additional benefits upon petitioner. The will of March 19,1948, was neither changed nor revoked. Decedent had previously provided for his first wife who had divorced him and made provision for his second wife by creating the trust referred to above and by said will had left his entire estate, with the exception of a nominal bequest, to his four adult children. The burden of proving that the petitioner had waived her right of election was upon the executor (Matter of Colaci, 288 N. Y. 158; Matter of La Due, 5 A D 2d 52). The executors have sustained this burden to the satisfaction of the court. Hpon the evidence the court finds that there was no cancellation or revocation of the postnuptial agreement. Accordingly, the court determines that the petitioner waived her right of election and that such waiver was in force at the death of decedent.