**The FIRST NATIONAL BANK OF PORTLAND, as Administrator d.b.n.c.t.a. of the Estate of Myrta B. Robinson, late of Brunswick, Maine, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. No. 8-135.**

United States District Court
D. Maine, S. D.

Jan. 21, 1966.

Edward T. Richardson, Jr., Portland, Me., for plaintiff.

Rufus E. Stetson, Asst. Chief of Refund Unit, Tax Div., Dept. of Justice, Washington, D. C., William E. McKinley, U. S. Atty., Portland, Me., for defendant.

GIGNOUX, District Judge.

This is an action for refund of federal estate taxes in the amount of $16,267.56, with interest, brought by the administrator of the estate of Myrta B. Robinson, who died on September 19, 1962. The only question presented is whether or not the decedent retained at her death a power to "alter, amend, revoke, or terminate" a trust created by her in 1954, so that the corpus of the trust was properly included in her gross estate by reason of Section 2038(a) (1) of the

Internal Revenue Code of 1954, 26 U.S.C. § 2038(a) (1).[1]

The facts have been stipulated and are as follows: On January 1, 1954, Mrs. Robinson executed a trust instrument for the benefit of her daughter, Emily Robinson McConnell, and her daughter's children, naming herself as trustee. By the terms of the trust instrument the income of the trust was to be paid over annually, during Mrs. Robinson's life, to Emily, or in the event of her death, to her issue. Upon Mrs. Robinson's death the trust was to cease and the trust fund was to be distributed, one-half to Emily and one-half (or the whole if Emily were dead) to Emily's children. Crucial to the issue presented by the present case are Clauses SIXTH and TENTH of the trust instrument, which provided as follows:

"SIXTH. The trust hereby created is irrevocable except as hereinafter stated.

\* \* \* \* \* \*

"TENTH: The original Trustee reserves the right to cancel the trust at any time whereupon the trust fund shall be paid to the children of Emily Robinson McConnell as above specified in clause NINTH, provided that at no time shall any part of the trust fund or income thereof inure to the benefit of the original Trustee or any person for whose support she is liable by law."

On December 1, 1954, Mrs. Robinson executed a supplement to the trust instrument. In paragraph 8 of the supplement she declared:

"8. The grantor was not intended to have, never has had and it is hereby declared that she never shall have any power to revoke or to obtain for herself, her husband or her dependents any beneficial interest in the principal or income. It is hereby declared that the trust created was intended to be and is a bona fide trust and that the Trustee thereunder is in all respects to be a fiduciary in law and in equity."

When Mrs. Robinson died, the District Director included the corpus of the trust in her estate. The administrator paid the resulting estate tax and brought this suit for refund.

It is clear that the corpus of the trust was properly included in the decedent's gross estate if at the time of her death she retained the power, reserved by Clause TENTH of the original instrument, to cancel the trust and to distribute the trust fund to Emily's children. The fact that she retained no power to revest in herself or her dependents any part of the corpus or income is not controlling. The reserved power to terminate the trust, and thereby to accelerate the time of distribution of the corpus and to affect the person or persons who might be entitled to the distribution, was sufficient to bring the trust within the coverage of Section 2038(a) (1). Commissioner of Internal Revenue v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228 (1946); Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L. Ed. 15 (1953).

Plaintiff does not dispute the foregoing principles. Its contention is that in paragraph 8 of the supplement Mrs. Robinson relinquished the power to cancel reserved in the original instrument, and therefore had at her death no power

---

1. SEC. 2038. REVOCABLE TRANSFERS

(a) *In General.*—The value of the gross estate shall include the value of all property \* \* \*—

(1) *Transfers after June 22, 1936.*— To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

to accelerate or to affect the beneficial enjoyment of the trust property. Plaintiff's argument is that the word "revoke" as used in the supplement is synonymous with the word "cancel" as used in the original instrument, cf. In re Griffiths' Will, 38 Misc.2d 87, 90, 237 N.Y.S.2d 44, 48 (Surr.Ct.1963); that the disclaimer of the power to revoke in the supplement embraced the power to cancel reserved in the original instrument; and that this case is controlled by the established law that a retained power to revoke or terminate a trust may be effectively relinquished by an appropriate expression of intent to that effect. See Bogert, Trust & Trustees § 1000, at 492 (2d ed. 1962); cf. Allen v. Trust Co. of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367 (1946).

It is obvious, however, that the decedent's purpose in executing paragraph 8 of the supplement was not to relinquish, but rather to clarify and confirm the power she had reserved to herself in Clause TENTH of the original instrument and to make it absolutely clear that she had not retained the power to recapture the trust property for herself, her husband or her dependents. The language used by the decedent in paragraph 8 is wholly inconsistent with an intent to relinquish the power to cancel reserved in the original instrument. In stating that she " * * * was not intended to have, never has had and it is hereby declared that she never shall have" any power to revoke, Mrs. Robinson was declaring in plain and unambiguous language that no such power had ever been retained by her; and as defendant points out, it would be unrealistic to infer an intention to relinquish a power from a denial that the power had ever existed.

It is evident from the language used by the decedent in the supplement that this is not a case where the decedent was making any substantive change in the plan for the disposition of her property which was contemplated by the original instrument. Rather, this is a case in which her purpose was quite evidently to clarify her original plan. Cf. Allen v. Trust Co. of Georgia, supra. What Mrs. Robinson did on December 1, 1954 was merely to eliminate any doubt as to what she had done on January 1.[2]

Since the decedent retained at her death the power to terminate the trust and thereby to affect both the time and the right of beneficial enjoyment of the trust property, the corpus of the trust was properly included in her gross estate pursuant to Section 2038(a) (1). Judgment will accordingly be entered for the defendant, with costs.

---

2. Although not disclosed by the record, the defendant points out that the decedent's obvious purpose in executing paragraph 8 of the supplement was to insure that the income of the trust was not taxable to her by virtue of Section 676(a) of the 1954 Code, 26 U.S.C. § 676(a), which became effective on August 16, 1954, approximately three months prior to the execution of the supplement. Section 676(a), a codification of one of the so-called "Clifford regulations," provides as follows:

"SEC. 676. POWER TO REVOKE

(a) *General rule.*—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a non-adverse party, or both."